UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HELENA MCFARLAND, )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>ST. MARY'S REGIONAL MEDICAL )<br>CENTER, )<br>)<br>)<br>  Defendant. ) | Docket no. 2:20-cv-00144-GZS |

**ORDER ON MOTION TO DISMISS**

Before the Court is Defendant St. Mary's Regional Medical Center's Motion to Dismiss (ECF No. 5), which seeks dismissal of Plaintiff Helena McFarland's Complaint (ECF No. 1) for failure to state a claim for which relief can be granted. Having reviewed the Motion, as well as the related memoranda filed by both parties (ECF Nos. 8 & 9), the Court hereby GRANTS the Motion.

**I.     LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In evaluating whether a complaint states a plausible claim, [the court] 'perform[s] [a] two-step analysis.'" Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting Cardigan Mountain Sch. v. New Hampshire Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). First, "the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. University of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 678). Second, the court "must determine

whether the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "This standard is 'not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Saldivar, 818 F.3d at 18 (quoting Iqbal, 556 U.S. at 678).

"Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal citations and quotations omitted). Rather, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability" from the facts. Id. at 13.

While a "motion to dismiss under Rule 12(b)(6) generally provides no occasion upon which to consider documents other than the complaint," Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 8 (1st Cir. 2020), the court "may make narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint," Flores v. OneWest Bank, F.S.B., 886 F.3d 160, 167 (1st Cir. 2018) (internal quotation marks omitted). Here, the Court finds it is appropriate to consider the documents attached to Defendant's Motion and draws the facts in the following section from those documents as well as Plaintiff's Complaint.

**II.     FACTUAL BACKGROUND**

McFarland suffers from brachial plexus neuropathy, which restricts her use of one hand. In or before January 2017, McFarland applied for an interpreter position at St. Mary's Regional Medical Center ("St. Mary's"). She was told that she was going to be hired but would first need

2

to go to "Work Med" for an evaluation.[1] McFarland told Work Med that, due to her condition, she would require software to allow her to dictate what she would otherwise have to type. Soon after she made this request, St. Mary's told her that she would not be hired. After McFarland questioned the reason for this change in course, however, St. Mary's did hire McFarland.

After being hired, McFarland continued to request that St. Mary's provide her with dictation software. St. Mary's responded that the cost of such software was prohibitive. During her employment, McFarland witnessed several of her coworkers improperly accessing patients' medical records. She informed St. Mary's of this situation, but St. Mary's took no action and McFarland's coworkers harassed her because of her report. On January 19, 2019, McFarland was terminated.

After her termination, McFarland dual-filed an administrative complaint with the Maine Human Rights Commission ("MHRC") and EEOC. This complaint was signed on November 12, 2019, but MHRC stamped it "Received on November 18, 2019." (Def. Ex. 1 (ECF No. 5-2), PageID # 22.) In this complaint, McFarland claimed that she was denied reasonable accommodations and that she had been fired in retaliation for whistleblowing activities.

In a response to written questions from MHRC regarding her charge, McFarland clarified that she was fired on January 14, 2019.[2] (Def. Ex. 3 (ECF No. 5-3), PageID # 27.) Thereafter, in a letter dated January 30, 2020, MHRC informed McFarland that her charge was untimely filed. Specifically, MHRC explained that because McFarland "was aware of [her] termination . . . on January 14, 2019," her filing deadline was November 10, 2019. (Def. Ex. 3 (ECF No. 5-4, PageID

---

[1] Work Med, or WorkMed, is a department of St. Mary's that specializes in occupational health care. See WorkMed Occupational Health, https://www.stmarysmaine.com/departmentsservices/workmed/ (last visited September 22, 2020).

[2] The Court notes that this date is five days earlier than the date represented in Plaintiff's Complaint.

# 28.) Recognizing that this date fell on a Sunday, MHRC indicated the deadline was the next business day, November 11, 2019. The letter also advised that McFarland retained the right to file a complaint in Maine Superior Court.

In a notice dated April 17, 2020, the EEOC likewise informed McFarland that her charge had been dismissed as untimely filed. This letter similarly advised McFarland of her right to sue. (Def. Ex. 4 (ECF No. 5-5), PageID # 29.) Thereafter, on April 27, 2020, McFarland filed the pending matter with this Court.

## III.  DISCUSSION

Plaintiff's Complaint sets forth three counts: (1) failure to provide reasonable accommodations, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (2) "hostile work environment," which the Court construes as arising under the ADA and the Maine Human Rights Act, 5 M.R.S.A. § 4572; and (3) a violation of the Maine Whistleblower Protection Act, 26 M.R.S.A. § 831. Defendant seeks dismissal of all of these claims based on Plaintiff's failure to exhaust her administrative remedies in a timely manner.

### A.  Failure to Allege Exhaustion of Administrative Remedies

The Court notes at the outset that Plaintiff does not allege that she exhausted her administrative remedies in her Complaint. Faced with this apparent pleading failure, the Court could dismiss the complaint with leave to amend. Exhaustion of administrative remedies is a requirement under both the federal and Maine statutory regimes. See Martínez-Rivera v. Puerto Rico, 812 F.3d 69, 77 (1st Cir. 2016) ("[T]he ADA . . . (as relevant to the type of ADA claim in play here) . . . require[s] that a plaintiff exhaust her administrative remedies before seeking judicial redress."); Walton v. Nalco Chem. Co., 272 F.3d 13, 20–21 (1st Cir. 2001) ("plaintiff . . . must plead the requisite MHRC filing" (internal quotation marks and alteration omitted)); see also Robertson v. Barber Foods, LLC, No. 2:19-cv-00455-NT, 2020 U.S. Dist. LEXIS 102437, at *11–

4

12 (D. Me. June 11, 2020) (allowing leave to amend "to include at least the allegation[] of administrative exhaustion"). However, in the present case, Plaintiff has not suggested that she wishes to allege anything further pertaining to administrative exhaustion beyond what is already captured in Defendant's exhibits. Under these circumstances, the Court concludes the record is sufficiently developed to allow for the Court to review the merits of Defendant's Motion.[3]

### B. Failure to Timely Exhaust Administrative Remedies

#### 1. ADA Claims (Counts 1 & 2)

Generally, any person claiming her employer engaged in disability discrimination is required to file a charge with EEOC or appropriate state agency within 300 days of the alleged discriminatory act. See, e.g., Burnett v. Ocean Props., Ltd., 327 F. Supp. 3d 198, 231 (D. Me. 2018) (discussing the "300-day time limitation"). Defendant asserts that Plaintiff's ADA claims must be dismissed because she did not file her charge within 300 days of the alleged discrimination. Plaintiff does not dispute that the charge was untimely filed, but asserts that this missed deadline does not bar her from filing suit. Plaintiff argues that, regardless of any requirement to timely exhaust administrative remedies, "[f]ederal law allows a person the right to sue 90 days after the EEOC takes certain action, including administrative dismissal of the action." (Pl. Response (ECF No. 8), PageID # 35 (citing 42 U.S.C. § 2000e-5(f)(1)).)

##### a. Timeliness

"[T]he ADA mandates compliance with the administrative procedures specified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and that, absent special circumstances . . . such compliance must occur before a federal court may entertain a suit that seeks recovery for an alleged violation of Title I of the ADA." Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 277

---

[3] The Court also concludes it is unnecessary to convert Defendant's motion to one for summary judgment given that the parties do not dispute the authenticity of the exhibits. See Flores, 886 F.3d at 167.

(1st Cir. 1999); see also 42 U.S.C. § 12117.  This "statutory schematic . . . sets out conditions precedent to bringing suit, among which are filing a timely charge . . . ."  Martínez-Rivera, 812 F.3d at 77 (internal citations omitted).  The Court agrees with Defendant that the charge, received by the MHRC on November 18, 2019, was filed outside the 300-day limitations period.  See 42 U.S.C. § 2000e-5(c), (e); 29 C.F.R. § 1601.13(b)(1) (300-day period).[4]

### b. Consequences of Untimeliness

"[T]he timely-charge requirement is mandatory but not jurisdictional . . . ."  See Martínez-Rivera, 812 F.3d at 77.  As such, it is subject to waiver, estoppel, and equitable tolling.  Id.; see also Zipes v. TWA, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").  However, Plaintiff has not raised any argument with respect to waiver, estoppel, or equitable tolling.  Rather, Plaintiff asserts that the 300-day filing requirement only "bars administrative action by the EEOC and MHRC."  (Pl. Response, PageID # 35.)  This assertion is incorrect.  Accordingly, the Court concludes that Plaintiff's ADA claim fails as a matter of law due to her failure to file a timely charge.

### C. State Claims (Counts 2 & 3)

In light of the dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  See Lambert v. Fiorentini, 949 F.3d

---

[4] This conclusion remains true even though it seems MHRC overlooked that Monday, November 11, 2019 was Veterans Day, meaning the 300-day period for filing would not have expired until November 12, 2019.  See Fed. R. Civ. P. 6(a)(1) ("When the period is stated in days or a longer unit of time . . . include the last day of the period, but if the last day is a Saturday, Sunday, *or legal holiday*, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." (emphasis added)); Fed. R. Civ. P. 6(a) ("The following rules apply in computing any time period . . . in any statute that does not specify a method of computing time.").  Furthermore, this conclusion also remains true even if the 300-day period is calculated from the January 19, 2019 termination date in Plaintiff's Complaint; using that date, the period would have expired on Friday, November 15, 2019.

22, 29 (1st Cir. 2020) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims.") (quoting Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995)) (alteration in original). The Court additionally notes that the parties' arguments turn in significant part on a pair of MHRA provisions, 5 M.R.S.A. §§ 4612(2-A) & 4622(1)(A), that were amended effective September 2019. (See Def. Reply (ECF No. 9), PageID # 39 n.2.) The novel question of how these amended state statutes impact Plaintiff's state law claims provides a further reason for this Court to decline to exercise supplemental jurisdiction. See Lambert, 949 F.3d at 29 ("Courts may also consider whether the state law issues are 'novel or sensitive.'")

### IV.     CONCLUSION

For the reasons stated, the Courted hereby GRANTS Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 5). Plaintiff's federal claims are DISMISSED with prejudice. Plaintiff's state law claims are DISMISSED without prejudice.

SO ORDERED.

    /s/ George Z. Singal
    United States District Judge

Dated this 6th day of October, 2020.